**Affirmed and Opinion filed August 13, 2015.**



In the

# Fourteenth Court of Appeals

## NO. 14-14-00378-CR

**CLYDE EDWIN HEDRICK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 13CR0898**

## O P I N I O N

A jury convicted appellant Clyde Edwin Hedrick of involuntary manslaughter and sentenced him to 20 years' confinement. Appellant challenges his conviction and sentence in two issues. First, he argues that his due process rights were violated due to insufficient notice of punishment enhancement. Appellant further asserts that the trial court abused its discretion by allowing evidence of extraneous acts, over his objection, during the guilt/innocence phase of

his trial. Because the extraneous acts were relevant, and more probative than prejudicial, and because appellant received adequate notice of enhancement, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The complainant, Ellen Beason, was last seen alive on July 29, 1984. On that day, the complainant was at the Texas Moon nightclub in League City, Texas. There, she met her close friend Candy Gifford and Gifford's husband. Sometime during the evening, appellant arrived at the Texas Moon. At the time, Gifford was having an affair with appellant. Gifford and her husband argued and left the Texas Moon. Gifford testified that when she left, appellant and the complainant were still at the nightclub. The following morning, Gifford drove by the Texas Moon and observed the complainant's car in the parking lot. Gifford never saw the complainant again. Gifford testified that sometime in November 1984 appellant took her to a location and showed her the remains of the complainant. Gifford continued to have a relationship with appellant and did not tell anyone about the remains because she was afraid of him.

On July 7, 1985, Gifford went to the Dickinson police and told them where the complaint's remains could be found. The police found the complainant's body under debris, adjacent to the causeway in Galveston, Texas. The complainant's cause of death was ruled undetermined. In February 1986, appellant was convicted of the misdemeanor offense of abuse of corpse.

The complainant's body was exhumed in 1993 and again in 2012. Examinations during those exhumations revealed that the complainant had a skull fracture. The complainant's death was ruled a homicide.

Appellant was indicted for the offense of murder. At his murder trial, the

State introduced a transcript of his testimony from the abuse-of-corpse trial. At the abuse-of-corpse trial, appellant testified that on July 29, 1984, he and the complainant left the Texas Moon and went to a sand pit in Dickinson, where the complainant went swimming and drowned. Appellant stated that he was afraid, so he drove around with the complainant's body, eventually leaving it where it was found.

Over appellant's objection, the trial court permitted the State to elicit testimony from Gifford that: (1) appellant threatened to kill her and her family if she told anyone about his showing her the complainant's remains; and (2) on July 7, 1985, appellant violently destroyed her apartment and threw things at her. The jury convicted appellant of the lesser included offense of involuntary manslaughter.

The murder indictment that appellant was tried on contained two enhancement paragraphs alleging a 1987 theft conviction and a 1988 conviction for possession of a controlled substance. After the guilt/innocence phase of the trial, but prior to the punishment phase, the State served notice on appellant's trial counsel by email that it was abandoning the enhancement paragraphs in the indictment and substituting a single enhancement paragraph alleging a 1977 attempted arson conviction. Appellant objected to having one business day's notice of the enhancement paragraph substitution. The trial court overruled his objection. The jury found the substituted enhancement paragraph true, assessed punishment at 20 years' confinement, and assessed a fine in the amount of $10,000. Appellant timely appealed.

## II.   ANALYSIS

Appellant raises two issues on appeal. Appellant complains that: (1) his due

process rights were violated by insufficient notice of the enhancement paragraph and (2) the trial court abused its discretion in allowing the State to introduce extraneous acts during the guilt/innocence phase of the trial.

## A. Admission of extraneous acts

Because appellant's second issue would result in greater relief, *i.e.*, remand for a new trial and not just for a new punishment hearing, we address it first. Appellant contends that the trial court abused its discretion in allowing the State to introduce extraneous acts. We disagree.

The admissibility of evidence is within the discretion of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We uphold the trial court's evidentiary ruling as long as it was within the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). We cannot simply substitute our own decision for the trial court's and should reverse only for a clear abuse of discretion. *See id.*

Extraneous-offense evidence that does not have relevance apart from character conformity is inadmissible. Tex. R. Evid. 404(b).[1] However, such evidence is admissible when the extraneous act is: (1) relevant to a fact of

---

[1] Rule 404(b) provides:

(b) Crimes, Wrongs, or Other Acts.

    (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

    (2) Permitted Uses; Notice in Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

Tex. R. Evid. 404(b).

consequence in the case aside from its tendency to show action in conformity with character and (2) its probative value is not substantially outweighed by the danger of unfair prejudice. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *see* Tex. Rs. Evid. 401, 402, 403, 404(b). We defer to the trial court's determinations whether extraneous evidence has relevance apart from character conformity and whether the probative value is substantially outweighed by the danger of unfair prejudice. *See Moses*, 105 S.W.3d at 627.

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action. Tex. R. Evid. 401. Even if the extraneous evidence is relevant, the trial court may properly exclude it under rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *See id.* 403. "When Rule 403 provides that evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,' it simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Montgomery*, 810 S.W.2d at 389.

When conducting a rule 403 analysis, courts must balance: (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (citing,

amongst others, *Montgomery*, 810 S.W.2d at 389–90).

## 1. Appellant's threat to Gifford

### a. Rule 404(b)

Appellant argues that his threatening Gifford was not relevant because whether he committed this extraneous act did not make whether he murdered the complainant more or less probable. We disagree.

"A defendant's conduct after the commission of a crime which indicates a 'consciousness of guilt' is admissible to prove that he committed the offense." *Ross v. State*, 154 S.W.3d 804, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Texas courts recognize "consciousness of guilt" as an exception to rule 404(b)'s general prohibition against evidence of extraneous offenses. *Torres v. State*, 794 S.W.2d 596, 598–99 (Tex. App.—Austin 1990, no pet.); *see Peoples v. State*, 874 S.W.2d 804, 809 (Tex. App.—Fort Worth 1994, pet. ref'd). Acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under rule 404(b) as showing "consciousness of guilt." *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994), *cert. denied*, 519 U.S. 1030 (1996). Therefore, threats made in an effort to suppress or destroy evidence are probative of consciousness of guilt. *See Rodriguez v. State*, 577 S.W.2d 491, 492–93 (Tex. Crim. App. 1979); *Peoples*, 874 S.W.2d at 809; *Torres*, 794 S.W.2d at 598–99.

In *Torres*, the Austin court of appeals concluded the appellant's phone calls to his wife—in which he threatened that, unless she dropped all charges against him, he would take away his family's military benefits and she also would go to jail—were relevant evidence of appellant's consciousness of guilt in the sexual assault of his stepdaughter and admissible under rule 404(b). 794 S.W.2d at 598–

6

99. Likewise, in *Keith v. State*, the Eastland court of appeals concluded that the appellant's threat to his burglary accomplice that he would have anyone who "snitched him out or got him in trouble . . . bumped off" was relevant and admissible under rule 404(b). 384 S.W.3d 452, 460 (Tex. App.—Eastland 2012, pet. ref'd); *cf. Peoples*, 874 S.W.2d at 808–09 (evidence that appellant attempted to "intimidate or silence" key State witness relevant under rule 404(b) as consciousness of guilt).[2]

Similarly, here, appellant's threat to Gifford that her family also "could be put" where the complainant's remains were if Gifford said anything about his showing her the remains was probative to show appellant's consciousness of guilt. Therefore, Rule 404(b) did not prohibit evidence of appellant's efforts to deter Gifford from reporting his involvement in the charged crime with threats of violence. We conclude the trial court did not abuse its discretion in determining that evidence of appellant's threat had relevance apart from the tendency to show conduct in conformity with character.

### b. Rule 403

We next consider whether the trial court abused its discretion by determining that the probative value of this evidence was not substantially overweighed by unfair prejudice. We conclude that it did not.

Appellant provides no discussion of the rule 403 balancing test in connection

---

[2] *See also Maddux v. State*, No. 14-97-00367-CR, 1999 WL 93224, at \*4–5 (Tex. App.—Houston [14th Dist.] Feb. 25, 1999, pet. ref'd) (not designated for publication) (evidence that appellant told witness to leave town so she would not be subpoenaed to testify against him admissible to show consciousness of guilt under rule 404(b)); *Reyes v. State*, No. 14-96-01189-CR, 1998 WL 733681, at \*3 (Tex. App.—Houston [14th Dist.] Oct. 22, 1998, pet. ref'd) (not designated for publication) ("We find the threatening letters demanding that the complainant drop the charges are precisely the type of evidence that is admissible under the exceptions to Rule 404(b).").

with evidence of his threat. Our analysis indicates these factors overall weigh more strongly in favor of admission. A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt. *See Torres*, 794 S.W.2d at 598. Threats or other attempts at coercion are "hardly the actions of an innocent accused," and evidence of appellant's threat is as probative of guilt as would be his flight. *See Rodriguez*, 577 S.W.2d at 493. In addition, the State's need for the evidence was significant given that no one except appellant was present when the complainant died, he claimed it was a drowning accident, and there were multiple exhumations and forensic examinations of the complainant's remains over time. Therefore, evidence of his consciousness of guilt tended to show that appellant was not blameless in the complainant's death. Evidence of the threat was unlikely to confuse or influence the jury in an improper way; to the contrary, it is rational to conclude that appellant threatened Gifford because he was guilty of the offense. The time required to develop the evidence was brief—one page of the record—and it was not cumulative of other evidence.

On our review of the record, we conclude that the trial court did not abuse its discretion by determining that the probative value of evidence of appellant's threat was not substantially outweighed by the danger of unfair prejudice.

### 2. Appellant's destruction of Gifford's apartment

#### a. Rule 404(b)

Next, appellant argues that his destruction of Gifford's apartment was not relevant and therefore not admissible under rule 404(b). We conclude that appellant opened the door to this evidence.

During his defensive opening statement, appellant stated:

> I expect that the evidence is going to show that on at least two occasions Candy Gifford proffered the ideas of cutting off the head,

8

cutting off hands, putting them in a bag, putting rocks in that bag, and throw it in the bay so that nobody could identify Ellen Beason.

Candy Gifford was still in love with Clyde Hedrick during this time. Clyde moved on. I expect that the evidence to show he and Candy were discovered by Candy's husband, and Clyde moved on and started dating a lady by the name of Deborah Keebler. And while he was dating Deborah Keebler, Candy, her relationship with her husband over, the divorce done, comes to Clyde. "I want you back. That relationship is over. I want to be with you." Clyde had moved on.

All of a sudden Candy Gifford walks into the police department and says, "Hey, I have information about a body." The State is going to try to characterize that is all of a sudden she just felt such remorse that she just needed to do the right thing. You are going to hear from people that Candy spoke with. Candy was pissed.

So Ellen's body is discovered. . . .

The State argued to the trial court that appellant misled the jury about why Gifford went to the police and explained she instead went because appellant destroyed her apartment. Appellant objected to this evidence; the court agreed to wait to rule. The State reapproached during Gifford's direct examination; appellant argued Gifford could be brought back as a rebuttal witness once he had presented evidence that she was a spurned lover. The trial court allowed the evidence during Gifford's direct examination because appellant had "brought it up in opening."

Otherwise inadmissible evidence may become admissible when a party opens the door to such evidence, i.e., by leaving a false impression with the jury that invites the other side to respond. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009), *cert. denied*, 560 U.S. 966 (2010); *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). Rebuttal of a defensive theory is an exception under rule 404(b). *Williams*, 301 S.W.3d at 687 (citing *Moses*, 105 S.W.3d at 626). A defensive opening statement—although not evidence—opens the door to

the admission of extraneous-offense evidence to rebut a defensive theory presented in the defensive opening statement. *Bass v. State*, 270 S.W.3d 557, 562–63 & n.7 (Tex. Crim. App. 2008) (evidence of pastor's other sexual assaults of girls in church office allowed under rule 404(b) where pastor in opening claimed that her allegations were "pure fantasy" and "pure fabrication" and that he was "the real deal and the genuine article"); *see De La Paz v. State*, 279 S.W.3d 336, 344–48 (Tex. Crim. App. 2009) (evidence of other "buy-bust" drug deals allowed under rule 404(b) where appellant's defensive theory was State witnesses were lying about the instant drug deal to please prosecution); *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[E]xtraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination[.]"). When the defense chooses to make its opening statement immediately after the State's, the State reasonably may rely on the defensive opening statement as to what evidence the defense intends to present and rebut this anticipated defensive evidence during its case-in-chief, as opposed to waiting until rebuttal. *Bass*, 270 S.W.3d at 563 n.7.

During opening, appellant laid the groundwork that it would provide evidence Gifford only decided to go to the police because she was upset he had moved on to another woman. Moreover, appellant later pursued this theory during his cross-examination of Gifford, soliciting testimony from Gifford regarding the timing and circumstances of her going to the police—how she did not report the remains for several months, "until July, a few weeks after breaking up with Clyde." *See id.* (any error in admitting evidence during direct examination may be cured where defense later opens the door). It is at least subject to reasonable disagreement whether the evidence of appellant's ransacking Gifford's apartment

just before she went to the police was admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory that Gifford only came forward because she was "spurned" and "pissed," and was somehow involved in the cover-up. *See id.* at 563. We conclude that the trial court did not abuse its discretion in deciding that the evidence of appellant's destruction of Gifford's apartment was admissible to rebut this particular defensive theory.

### b. Rule 403

We next consider appellant's argument that, even if admissible to rebut his defensive theory, evidence of appellant's "throwing everything at [Gifford] and committing an act of violence" was unfairly prejudicial under rule 403. We reject this argument.

Appellant argues that the evidence here was not offered to support any "hotly contested" fact. During his opening statement, however, appellant himself placed in issue the reasoning behind Gifford's going to the police by stating that there was evidence Gifford was a spurned lover angry at appellant. Appellant contends there was no need for this evidence because both sides agreed that appellant showed Gifford the remains. However, the State indicated it only needed to present such evidence after appellant left a false impression with the jury that Gifford decided to go to the police because he would not take her back. While the jury likely could not help but be impressed by evidence of "an act of violence" against Gifford, Gifford's testimony was presented in the limited context of providing an explanation for her going to the police on July 7, 1985. Gifford was one of ten State witnesses, the evidence amounted to approximately four pages, and the evidence was not repetitive. In contrast, the parties presented over 230 pages of forensic testimony related to determining what actually happened to the complainant. It is not likely that evidence of appellant's ransacking Gifford's

11

apartment confused or distracted the jury from determining that main issue.

Rule 403 should be used sparingly and envisions exclusion only where there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). We cannot say that this is one of those times. Therefore, we conclude that the trial court did not abuse its discretion by determining the probative value of the evidence of appellant's destruction of Gifford's apartment was not substantially outweighed by the danger of unfair prejudice.

We overrule appellant's second issue.

## B. Notice of punishment enhancement

In his first issue, appellant claims that his due process rights were violated where the State only provided him with notice of the substituted enhancement paragraph on the Friday before Monday's punishment hearing. We disagree.

When the State seeks to enhance a defendant's punishment with evidence of a prior conviction, "[t]he accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial on the question of whether he is the named convict therein." *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006). "[P]rior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment." *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997).

When conducting a due process analysis, the determination of whether proper notice of enhancements was given does not require that notice be given within a particular period of time before trial or before the guilt/innocence phase is completed. *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010) (citing *Villescas*, 189 S.W.3d at 294). In determining whether appellant received

sufficient notice of the State's intent to enhance punishment, we look to the record to identify whether appellant's defense was impaired by the timing of the State's notice. *Id.* When a defendant has no defense to an enhancement, and has not suggested the need for a continuance in order to prepare such a defense, notice given at the beginning of the punishment phase satisfies due process. *Villescas*, 189 S.W.3d at 294.

In *Garza v. State*, we held that the State's notice of intention to use prior convictions and extraneous offenses, which notice identified the particular burglary enhancement ultimately used for enhancement by cause number, county of the convicting court, district court number, and conviction date, "provided appellant with adequate notice that his sentence could be enhanced by the burglary conviction." 383 S.W.3d 673, 676 (Tex. App.—Houston [14th Dist.] 2012, no pet.). This Court also noted that the appellant in *Garza* received further notice at the beginning of the punishment hearing when the State read the enhancement allegation aloud. *Id.* The appellant in *Garza* did not request a continuance to investigate or prepare a possible defense, and did not argue on appeal any possible basis for challenging the State's evidence of the prior conviction. *Id.* at 676–77. We concluded that there was no due process violation. *Id.* at 677.

*Garza* squarely controls. In the instant cause, the State provided appellant with two separate documents providing notice[3] pursuant to rules 404(b) and 609, and articles 37.07 and 38.57 of the Texas Code of Criminal Procedure, of its intent to introduce evidence of appellant's other crimes, wrongs, and acts, which included the 1977 conviction for attempted arson. The notice documents identified the attempted arson conviction by cause number, county of the convicting court, and

---

[3] The second notice was a supplemental notice of intent to use evidence of other crimes, wrongs, or acts.

conviction date. Appellant received additional notice of the State's intention to substitute the 1977 attempted arson conviction for the 1987 theft conviction and the 1988 possession conviction on the business day prior to the punishment phase. Appellant did not request a continuance to discover and prepare a defense, and in his brief does not argue any particular basis for challenging the State's evidence of the attempted arson conviction.[4] Under these circumstances, we find no due process violation. *See id.*

We overrule appellant's first issue.

### III. CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/    Marc W. Brown
       Justice

Panel consists of Justices Christopher, Brown, and Wise.
Publish — TEX. R. APP. P. 47.2(b).

---

[4] The State's evidence included the judgment in the 1977 attempted arson cause, which contained his photograph and fingerprints, as well as appellant's testimony from his abuse-of-corpse trial acknowledging that he committed the 1977 attempted arson.

14