**Affirmed and Memorandum Opinion filed July 7, 2016.**



In The

# Fourteenth Court of Appeals

NO. 14-15-00115-CR
NO. 14-15-00116-CR

**ANDREW  HOUSTON  ALLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause Nos. 66050 & 66951**

## M E M O R A N D U M   O P I N I O N

Appellant Andrew Allen was charged by two separate indictments and convicted of misapplication of trust funds.[1]  Appellant presents three issues.  We affirm.

---

[1] Tex. Prop. Code Ann. § 162.031 (West 2009).

## Factual and Procedural Background

On June 19, 2008, appellant, owner of Allen Brothers Construction, entered into a $1,069,000 contract with the owner and general manager of the Texas location of SYNEO, LLC (formerly, Technical Innovations), to construct a new office building. Appellant received an initial "pre-mobilization draw" from SYNEO of $40,679.94 and a "mobilization draw" of $55,000 to begin construction. From June 2008 through May 2009, appellant made additional draws from SYNEO to cover project expenses. Appellant's wife, Johni Jack Allen, signed the releases for these draws and was "very involved in . . . keeping the paperwork" related to the SYNEO contract.

By May 2009, appellant had drawn 84.2% of the funds allotted for the project. Gary Cordell, owner and general manager of SYNEO, hired a third party to assess appellant's progress on the project. The third party informed Cordell that, despite the drawing of nearly 85% of the allotted funds, the project was not 85% complete. Cordell also learned that appellant's subcontractors were not being paid for work completed. Cordell contacted each subcontractor to determine how much work was done and how much each had been paid. Cordell discovered that many of the subcontractors had not been paid commensurate with their completed work. In order to rectify the situation, Cordell paid the contractors what they were owed. These payments brought the total cost of the project to $498,549.98 over the initial contract price.

On July 14, 2008, the engineering firm of Baker and Lawson partnered with appellant to complete two projects for the City of Angleton—an addition to the City's fire station and an addition to its City Hall. The contract for the fire station addition was worth $106,750, and the contract for the City Hall addition was worth $485,605.

2

Each project had a draw schedule that corresponded with different phases of the project. According to the schedule, appellant was to make a draw by invoicing Baker and Lawson each time the subcontractors completed a phase of the project. Appellant drew $10,750 for "mobilization" costs incurred for the fire station project—insurance, performance bonds, and equipment costs. However, appellant did not use this money to obtain any performance bonds for the project.

Appellant also received a $20,000 draw for the fire station project. However, the City later contacted Baker and Lawson to complain of the lack of performance on the fire station contract. Baker and Lawson contacted the company responsible for building the fire station's framework and was informed that the framework had not been completed. Baker and Lawson requested that appellant refund the $20,000 draw, but appellant refused. Baker and Lawson reimbursed the City for the $20,000 draw and for $8,700 of the initial mobilization draw. The City forbade Baker and Lawson from continuing work on the fire station project.

A few months later, appellant's subcontractors began calling Baker and Lawson to complain that appellant had not paid them for their work on the City Hall project. Appellant made multiple withdrawals—totaling as much as $450,000—from money being held in trust for the subcontractors. However, when the subcontractors invoiced appellant for the work performed, appellant either refused to pay them or issued checks that bounced.

After it became apparent that appellant was not going to pay the subcontractors, Baker and Lawson began paying the subcontractors directly. Baker and Lawson issued a check to one subcontractor, Ben Brown Electric, for $16,000 with the understanding that appellant would reimburse Baker and Lawson. Appellant presented Baker and Lawson with a reimbursement check, which the

3

firm was unable to cash due to insufficient funds.  After several attempts to cash the check, Baker and Lawson learned that appellant had stopped payment on the check.   Appellant never reimbursed the firm.  As a result of appellant's failure to pay the subcontractors, the City Hall project cost an additional $24,395 to $34,395 over the contract price.

Appellant was charged by two separate indictments of misapplication of trust funds.  The first indictment, cause number 66050, contained four counts, with one paragraph in each count and charges related to the SYNEO (Technical Innovations) project.  The second indictment, cause number 66951, contained two counts, with three paragraphs in count one and one paragraph in count two and charges related to the Baker and Lawson projects.

Evidence presented at trial indicated that throughout the time he was under contract with both Baker and Lawson and SYNEO, appellant had sufficient funds to pay the subcontractors, but instead made payments to other parties.  During the time he was under contract, appellant and appellant's wife issued checks to appellant, his mother-in-law, his father, his Capital One credit card account, and a health insurance company.

The trial court granted a directed verdict for appellant on the fourth count in cause number 66050.  The jury found appellant guilty on counts one, two, and three in the indictment for cause number 66050 and on counts one and two in cause number 66951.[2]  The jury assessed punishment at eight years' confinement in the Texas Department of Criminal Justice, Institutional Division in both cause numbers, to be served concurrently.  Additionally, the jury assessed a $10,000 fine in cause number 66050.  Appellant timely appealed.

---

[2]The trial court also granted a directed verdict for paragraph three of count one in cause number 66951.  Two paragraphs remained in count one; the jury found appellant guilty of both.

## Analysis

In three issues, appellant contends the trial court erred by (1) admitting extraneous-offense evidence during the guilt-innocence phase of trial; (2) failing to require the State to make a paragraph election for cause number 66951; and (3) including a law of parties instruction in the jury charge.

## I. Extraneous-Offense Evidence

In his first issue, appellant argues the trial court erred in admitting evidence of extraneous offenses during the guilt-innocence phase of trial. Appellant complains of testimony regarding: (1) his failure to pay five subcontractors who, though under contract for the Baker and Lawson projects, were not named in the indictment; and (2) his manipulation of his business records.

Robin Crouch, the vice president of Baker and Lawson, testified that the firm began paying subcontractors directly "after it was apparent that [appellant] was not going to pay them." Crouch continued:

> A. He told us that he wasn't paying them. I mean, he would send e-mails.
>
> Q. Tell me what you mean, "told us". He would send e-mails that said what?
>
> A. There was one that stated he was paying this, this, and this; and after that, he was broke. So I mean - -
>
> Q. And did you - - when you were getting - - when you were corresponding with the subcontractors about not getting paid, did they show you any documents or anything?
>
> A. Well, they would show me the invoices. Some of them had where Andy paid some, but there was still a balance remaining.

Appellant objected to the testimony under Rules 403 and 404, arguing that it was extraneous-offense evidence not relevant to the subcontractors listed in the indictment; that the testimony was more prejudicial than probative; and that the

State was engaging in a "character assassination." The trial court overruled this objection.

Connie Roswell, bookkeeper for appellant's construction business, also testified to appellant's extraneous fraudulent acts. Roswell testified:

Q. At any time during the course of your employment, were you asked to change entries on bids that were being prepared?

A. Not bids; but on documents, yes.

Q. You were asked to change entries on documents. Could you tell us which documents you were asked to change?

A. It was on an Excel spreadsheet.

Q. Do you know why this Excel spreadsheet was being prepared?

A. To the best of my recollection, costs were being put together for a job, a church job; and job costs came out of the system into an Excel spreadsheet. And at that point, I was asked to add some expenses from a previous job to increase the expenses on that which we were looking at at that time.

Q. And who asked you to perform these adjustments?

A. Andy Allen.

Q. Just so I understand this, Andy was asking you to inflate the bid using expenses and costs from a previous job.

A. Correct.

Following a voir dire of Roswell outside the presence of the jury, appellant objected to Roswell's testimony on several grounds. Appellant objected under Rules 401, 402, 403, and 404(b), arguing that the evidence was not relevant, was more prejudicial then probative, and was inadmissible character evidence. The trial court overruled each of appellant's objections.

Evidence of extraneous offenses is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with this character." Tex. R. Evid. 404(b)(1). However, such evidence

6

"is admissible when the extraneous act is: (1) relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character" and (2) "its probative value is not substantially outweighed by the danger of unfair prejudice." *Hedrick v. State*, 473 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see* Tex. Rs. Evid. 401, 402, 403, 404(b). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Tex. R. Evid. 401. We review the trial court's decision to admit evidence for abuse of discretion and defer to the trial court's determinations of whether extraneous-offense evidence has relevance apart from character conformity and whether the probative value is substantially outweighed by the danger of unfair prejudice. *Hedrick*, 473 S.W.3d at 829 (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *see* Tex. R. Evid. 404(b). [3] We will uphold the trial court's evidentiary ruling "if there is any ground for doing so, even if the trial court did not rely upon the proper ground and even if the defendant did not assert a proper ground for excluding the evidence." *K.J. v. USA Water Polo, Inc.*, 383 S.W.3d 593, 610 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Appellant argues that the witnesses' testimony was improperly admitted as character evidence to show conformity with prior instances of fraud. Appellant also argues that the evidence was highly prejudicial. Upon review of the trial court's evidentiary decision, we conclude that (1) the testimony was properly admitted as evidence tending to prove appellant's intent to defraud the subcontractors named in the indictment and (2) the evidence's probative value was

---

[3] The State must also provide reasonable notice to the defendant before trial that it intends to introduce extraneous offense evidence. Tex. R. Evid. 404(b) (West 2015). Approximately one year before trial, the State provided appellant with notice of its intent to use extraneous-offense evidence.

not substantially outweighed by the risk of unfair prejudice.

The relevance of extraneous offenses to show intent is derived from the "doctrine of chances." *Sifuentes v. State*, —S.W.3d—, 2016 WL 1128175, at *7 (Tex. App.—Houston [14th Dist.] March 22, 2016, no pet.). The doctrine of chances provides that "evidence that appellant had on other occasions committed similar offenses to the one he is charged with serves to reduce the possibility that the act in question was done with innocent intent." *Id.* (quoting *Plante v. State*, 692 S.W.3d 487, 492 (Tex. Crim. App. 1985)). Once the defendant claims accident, mistake, or lack of intent, intent "can no longer be inferred from other uncontested direct evidence, and the State is allowed to prove intent through evidence of other crimes, wrongs, or acts." *Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim. App. 1990)).

In order to convict appellant of misapplication of trust funds, the State was required to prove that appellant, "with intent to defraud, . . . divert[ed] trust funds without first fully paying . . . the beneficiaries of the trust funds." Tex. Prop. Code Ann. § 162.031 (West 2009). Appellant repeatedly argued that he lacked the requisite intent to defraud and maintained he was merely a bad businessman. Appellant's opening statement is illustrative: "The State's going to present evidence that Andy Allen owes money. But owing money is not an intent to defraud . . . You're going to hear evidence of poor business, bad judgment, [and] bookkeeping by people that aren't really trained, not by Mr. Allen." Appellant also elicited testimony on cross-examination that he did not "really have [his] ducks in a row to run a construction business."[4]

---

[4] The credit manager for one of appellant's subcontractors testified the following:

Q. '09 was a tough time; wasn't it?

Appellants' prior fraudulent activities as to subcontractors not listed in the indictment make it more probable that he intended to perpetrate the same or similar fraud against the subcontractors that are listed in the indictment. *See Plante*, 692 S.W.2d at 498. The extraneous acts discussed in Crouch's and Roswell's testimony are "sufficiently similar to the charged offense for the purposes of the doctrine of chances," and so are relevant to appellant's intent to defraud the subcontractors listed in the indictment. *Sifuentes*, 2016 WL 1128175, at \*7.

Having concluded that the testimony was relevant, we now determine whether the probative value of the extraneous-offense evidence substantially outweighs the danger of unfair prejudice, beginning with the presumption that it does. *Id.* at \*8 (citing *Montgomery* 810 S.W.2d at 389). It is the defendant's burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *Id.* "In reviewing trial courts' balancing determinations under Rule 403, we reverse only rarely and upon a clear demonstration of abuse of discretion." *Id.* A Rule 403 analysis considers the following factors: (1) the

---

A. Yes, sir.

Q. And you had met Andy a few times and understood his business practices, you might say?

A. I had met him when he had come into the office to make payments.

Q. Did he seem well experienced in running such large projects?

A. I honestly didn't know. I couldn't say one way or the other. If he was capable or not, that's not for me to say.

Q. You had told me earlier he didn't seem to quite - - it takes - - you got to really have your ducks in a row to run a construction business; correct?

A. That is correct, yes, sir.

Q. And I think you told me that you saw that Andy may not have quite had those abilities; is that correct?

A. What I had stated was that if you don't have your ducks in a row, you could sink very easily.

strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous offense evidence to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence; and (4) the strength of the proponent's need for the evidence to prove a fact of consequence. *Id.*

Both Crouch's and Roswell's testimony "cast[] serious doubt on appellant's claim that he lacked the intent" to defraud the subcontractors listed in the indictment. *Id.* Further, the trial court instructed the jury that it could not consider evidence of extraneous offenses for any purpose unless it found that the offenses were proven to exist by competent evidence beyond a reasonable doubt and, even then, the evidence could only be considered to show motive, opportunity, preparation, intent, absence of mistake, notice, plan, or knowledge or to rebut a defensive theory. "We generally presume a jury followed a trial court's instruction regarding consideration of evidence." *Id.* Crouch's and Roswell's testimony was clear and concise and there is nothing in the record that indicates that it was misleading, confusing, or cumulative. We therefore conclude that the trial court did not abuse its discretion in admitting this extraneous-offense evidence. We overrule appellant's first issue.

## II. Paragraph Election

In his second issue, appellant contends that the trial court erred in not requiring the State to elect between the two separate paragraphs set forth in count one of the indictment for cause number 66951.

The first paragraph of the indictment charged that appellant:

> . . . on or about the 1st day of July, 2009, . . . did then and there intentionally or knowingly, and with the intent to defraud, directly and indirectly retain[], use[], disburse[] or otherwise divert[] trust funds in

10

an amount of $500 of more, held by ANDREW ALLEN as Trustee, under a professional services contract on specific real property, namely 120 South Chenango, Angleton, Brazoria County, Texas without first fully paying all current and past due obligations incurred by the Trustee to all artisans, laborers, mechanics, contractors, subcontractors, and materialmen, namely, Ben Brown Electric Incorporated, incurred in connection with construction for which the funds were received.

The second paragraph of the indictment was identical to the first except that it charged that appellant diverted trust funds without first paying subcontractor Air Temp Controls. After both the State and appellant rested, appellant requested that the trial court require the State to elect which paragraph it planned to rely upon for conviction. The trial court denied appellant's request.

The trial court in its discretion may order the State to make its election at any time prior to the resting of the State's case in chief. *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988). However, "once the State rests its case in chief, in the face of a timely request by the defendant, the trial court *must . . .* order the State to make its election. Failure to do so constitutes error." *Id.* Requiring the State to elect "protects fundamental rights such as notice and unanimity, insuring both that the defendant is aware of precisely which act he must defend himself against, and that the jurors know precisely which act they must *all* agree he is guilty of in order to convict him." *Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim. App. 2006). Therefore, the trial court's failure to require an election upon timely request is constitutional error. *Fleck v. State*, 201 S.W.3d 268, 271 (Tex. Crim. App. 2006). When reviewing a constitutional error, we "must reverse unless we find beyond a reasonable doubt that the error did not contribute to the conviction or had but a slight effect." *Id.*; Tex. R. App. P. 44.2(a).

Appellant contends that he was denied appropriate notice of which act he "would be called upon to defend" even though he did not make his election request until after he rested his defense. However, because "the purpose of election is more than to aid the defendant in preparing a valid defense," we will review the trial court's denial of appellant's election request to determine whether it prejudiced appellant's right to a unanimous jury and, therefore, resulted in harmful error. *Palmer v. State*, No. PD-1746-04, 2006 WL 2846864, at *1 (Tex. Crim. App. Oct. 4, 2006) (not designated for publication); *Phillips*, 193 S.W.3d at 912.

The Texas Constitution and the Code of Criminal Procedure require juries to reach a unanimous verdict in all felony prosecutions. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008); *see also* Tex. Const. art. V, § 13; Tex. Code Crim. Proc. art. 36.29. "Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). "The unanimity requirement is undercut when a jury risks convicting the defendant on different acts, instead of agreeing on the same act for a conviction." *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000).

There was no such risk in this case. The jury returned a unanimous verdict for paragraph one of the indictment and a separately-signed unanimous verdict for paragraph two of the indictment. The separate verdict forms in this case ensured that each juror agreed that the defendant committed not only one, but both, specific criminal acts described in each paragraph of the indictment. Appellant received a unanimous verdict as to both acts alleged in the indictment. Therefore, we conclude that the trial court's failure to require an election did not contribute to appellant's conviction. We overrule appellant's second issue.

## III. Law of Parties

In his third and final issue, appellant contends that the trial court erred in including an instruction regarding the law of parties in the jury charge. The jury charge authorized appellant's conviction as either a principal or as a party to the misapplication of trust funds perpetrated by appellant's wife, Johni Jack Allen.

"When the evidence is sufficient to support both primary and party theories of liability, the trial court does not err in submitting an instruction on the law of parties." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). A party may be held "criminally responsible as a party to an offense" if the offense was committed "by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01(a). In determining whether the accused participated as a party, the court may look to events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *See Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)).

Viewed in its entirety, the evidence is sufficient to support both primary and party theories of liability. The record demonstrates appellant's wife was active in his business and maintained records for the company. Appellant's wife signed releases for draws of funds to appellant and was also responsible for the delivery of checks to subcontractors. In fact, the record shows that appellant's wife wrote more checks for the business than appellant did. It is therefore plausible that, by his own fraudulent activity, appellant could have been a party to his wife's misapplication of trust funds. We conclude that the trial court did not err in submitting an instruction to this effect. Appellant's third issue is overruled.

## Conclusion

Having overruled each of appellant's issues, we affirm the trial court's judgments.


/s/  Marc W. Brown
    Justice


Panel consists of Justices Jamison, Donovan, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).