**Affirmed and Memorandum Opinion filed August 16, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00471-CR

**RONALD KELVIN PERRY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 1386767**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Ronald Perry of murder.[1]  Perry presents two issues on appeal: (1) the evidence is legally insufficient to support a finding of guilt; and (2) the trial court erred in admitting evidence of a prior extraneous

---

[1] Tex. Penal Code § 19.02(b)(1), (b)(2) (West 2015).

offense.  We affirm.

**Factual and Procedural Background**

Early on the morning of August 23, 2012, emergency medical personnel were dispatched to a ditch near appellant's home on Dorchester Street in Houston. Captain S. Langford of the Houston Fire Department arrived at the scene and found complainant, Joseph Perry, being supported by appellant, his brother. Complainant was bloody.  Appellant told Langford that complainant had "fallen on a knife during a scuffle."  Officer M. Losey of the Houston Police Department arrived at the scene, where she observed appellant watching complainant receive treatment for his injuries.  Losey asked appellant what happened, and appellant told Losey that he and his brother had been fighting over money and that his brother "fell on the knife."  Losey testified at trial that appellant was incoherent, intoxicated, and having a hard time standing up.  Losey noticed that appellant had fresh blood on his hands and on his arm.  Appellant told Losey that he had become bloody as a result of trying to save his brother.  Losey handcuffed appellant, searched him, and put him in the back of a patrol car for further investigation. Meanwhile, complainant was transported to LBJ Hospital, where he died. Complainant's death was ruled a homicide by multiple sharp-force injuries.

After complainant was removed from the scene, Officers J. Guerra and J. Pena from the Houston Police Department arrived to initiate a crime scene investigation.  When Guerra arrived, he spoke with appellant, who told Guerra that he and complainant had been involved in a verbal altercation and that, in the course of this altercation, complainant brandished a knife and swung it at appellant. Appellant told Guerra that complainant fell to the ground a few times and then began to bleed from the neck.  Appellant stated that complainant had fallen on a knife, and that he tried to help complainant after he noticed that complainant was

2

bleeding. Guerra was unable to locate any eyewitnesses to the altercation.

Pena asked appellant for permission to photograph him as part of the investigation. Appellant was cooperative and allowed Pena to photograph his hands, his body, and his shoes. Appellant's hands and arm had blood on them, but his shoes were clean. Appellant also gave consent for the police to enter his house to look around and take photos. Pena entered the house and documented the scene. Pena did not locate any knives or anything else of evidentiary value—such as bloody clothing or shoes. Pena inspected the perimeter of the house, including the patio. On the patio, Pena found beer cans, napkins, a bucket, and a pack of cigarettes, but no blood on the patio or in the immediate vicinity. Pena found a bloody sandal in the grassy area in between the patio and the ditch where complainant was found. In the ditch, about 60 to 80 feet from the patio, was a large pile of debris and trash, including an upside-down sofa. There was a "small blood trail" from the sandal to the debris pile. Pena testified that the sofa had a "heavy amount of blood" on it, which indicated to him that "either somebody[] [had] been sitting there, laying there, or they were in that position for a long time, bleeding out." Pena looked through the debris pile for a knife, but did not locate one. Losey helped the other officers search for a knife in the grass and in the wooded area close to the ditch. No officers were able to find a knife. Pena testified that he looked in the debris pile to determine whether any pointed pieces of debris may have stabbed or impaled complainant, but did not see any blood on any debris.

Officer B. Evans was assigned to investigate complainant's death and also arrived at the scene the morning of August 23. Evans canvassed the area in an effort to find witnesses to the altercation between complainant and appellant. Evans was not able to find any eyewitnesses to the altercation. Evans testified that

3

he "went into" the debris pile and assessed whether "there was anything readily . . . apparent that could have caused an injury to an individual." Evans did not find any object in the pile that appeared to be involved in complainant's death. After Evans assessed the scene, he transported appellant for questioning. Evans testified extensively at trial as to inconsistencies between appellant's narrative of complainant's death and the physical evidence found at the crime scene. Evans testified that appellant told him that complainant initially collapsed next to a car at the scene, but that later appellant told him that complainant had collapsed next to a chair. Evans testified that the physical evidence at the scene did not substantiate either narrative because there was no blood found at either of those locations. Evans aided appellant in drawing a diagram of the scene, in which appellant marked the point at which he realized that complainant was bleeding. Evans testified that this diagram did not match the physical evidence at the scene. Appellant told Evans that there was a trash can in the grassy area at the scene, but police photos indicated that the trash can actually was positioned next to a car in the parking lot. Appellant also told Evans that he had attempted to use a *Green Sheet* newspaper to stop the bleeding from complainant's neck. However, appellant first told Evans that he had left complainant to go and get the *Green Sheet*, but later told Evans that he got the *Green Sheet* from the debris pile. Later in the day on August 23, Officer L. Verbitsky revisited the crime scene to retrieve the *Green Sheet*. Verbitsky testified that he did not locate any other objects at the scene that appeared to have blood or biological evidence on them.

Evans interviewed appellant again on September 6, 2012. In the second interview, appellant told Evans that complainant had "smoked a lot of crack" and that his family previously had to prevent complainant from killing himself with a gun, overdosing on pills, and cutting his own wrists. Evans testified that appellant

4

retracted a statement from his first interview in which appellant said that he and complainant had been arguing for three or four days about nonpayment of rent. Evans testified that in the second interview, as in the first, appellant showed "no emotion" when talking about his brother's death, and that he became angry during the questioning. On cross-examination, Evans admitted that the video footage of appellant's first interview showed appellant tearing up and putting his hands over his face when he found out that complainant had died.

Dr. Merill Hines, assistant medical examiner at the Harris County Institute of Forensic Sciences, testified regarding the autopsy performed on complainant's body under his supervision. Complainant suffered a "superficial incised wound" on the front of his left arm, a stab wound on the left side of his neck ("wound A"), and a stab wound on the left side of his lower back ("wound B"). Wound A was 3.75 inches deep and was caused by a "sharp implement, passed through the skin, the soft tissue, mainly the muscle side of the neck, and continued into the esophagus." Wound A "clearly injured blood vessels," as evidenced by the amount of blood found in complainant's stomach. Hines testified that wound A was consistent with being stabbed with a sharp instrument, like a knife. Hines explained:

> It's a stab wound. It's - - it has a linear, or flat appearance, although in this case, it's curved nearly a right angle, which is something we see in some cases it indicates that the knife has moved in the wound. It's not a circular puncture wound or something of that nature. It's consistent with an injury caused by a knife being plunged into the decedent's neck.

Wound B was 1.5 inches deep and was also consistent with being stabbed with a knife. Hines testified:

> The features that suggest this was caused by a knife, similar to the stab wound of the neck, including a slit-like appearance, and in this

5

particular injury, you can see a small forked end here on the right side of the photograph, which is caused when a knife is inserted at a slightly different angle at which it was removed from the body. So the knife is turned slightly from when it goes in and when it goes out, and the edge of the weapon creates a slit when it goes in and then a small slit adjacent to that when it's removed, and you can see there's a very slight difference.

Hines also testified that complainant had what appeared to be a defensive wound on the palm of his right hand.

Hines did not recall finding any debris or foreign objects in the wounds. The autopsy report did not indicate the presence of any foreign material either. On cross-examination, appellant pressed Hines on whether complainant's wounds could have been caused by an implement other than a knife. Hines responded:

I can say that it was caused by something that has the shape and edge characteristics of a knife. I don't know if it was a particular knife or an object that was not a knife that was shaped and sharpened like a knife.

. . .

Stab wounds, unlike incised wounds, do give more information as to the type of object that caused them. In this case, it was sharp with a sharp end, because there's no abrasion around the wound that would indicate a blunt tip to the item, which would abrade the skin as it was inserted into the back. And the item, or weapon, is relatively narrow, because it was able to produce a narrow wound track through the body, or roughly 3 3/4 inches was this width, or less, and so you have to think of this as a relatively narrow item with a pointed end, or sharp end, with at least one sharp edge, and it's an object that's flat.

Appellant asked Hines directly whether a piece of glass from the debris pile could have caused complainant's wounds. Hines responded:

It would have to be an extremely thin piece of glass . . . . In this case, the lack of distance between the two margins of the wound indicates that it was caused by a very thin sharp object such as a knife. Glass,

6

typically, is rather thick and may have a sharp edge to it, but would generally cause a wound that was more of a hole or defect when you put it back together.

 . . .

I think - - the margins of the wound, regardless of whether or not there are small cuts on it, would be consistent with a knife, and the presence or absence of those cuts do not alter my confidence that it was caused by a knife.  There are other aspects of other sharp force injuries and penetrating sharp force injuries that I've seen that would alter that, I just don't see them here.

Hines testified that a standard toxicology screening was done as part of the autopsy and no amphetamine, methamphetamine, cocaine (or crack cocaine), phencyclidine (PCP), or alcohol were detected in complainant's system.

The State introduced evidence of two stabbings previously committed by appellant—one in which appellant pleaded guilty to murder and one in which a grand jury declined to indict appellant.  Appellant objected under Texas Rules of Evidence 401, 402, 403, and 404(b).  After hearing argument from the State and from appellant, the trial court overruled appellant's objections and admitted the evidence, ruling that it was relevant to rebut appellant's defensive theory that complainant's death was an accident.

At the close of evidence, appellant moved for directed verdict, arguing that the evidence was insufficient to support a conviction.  The trial court denied the motion.  The jury found appellant guilty of murder.  Appellant pleaded "true" to one enhancement, and the trial court assessed punishment at 40 years in the Texas Department of Criminal Justice, Institutional Division.  Appellant moved for a new trial, again arguing that the evidence was insufficient to support a conviction.  The trial court denied appellant's motion for new trial.  Appellant timely filed this appeal of his conviction and presents two issues: (1) the evidence presented at trial is insufficient to support a conviction for murder; and (2) the trial court erred in

admitting evidence of a prior extraneous incident involving a killing in self-defense.

## Analysis

### I. Sufficiency of the evidence

In evaluating the sufficiency of evidence presented at trial, we "examine all evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Price v. State*, 456 S.W.3d 342, 347 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). "Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder." *Price*, 456 S.W.3d at 347. In order to convict a defendant of murder, the jury must find, beyond a reasonable doubt, that the defendant: (1) "intentionally or knowingly cause[d] the death of an individual"; or (2) "intend[ed] to cause serious bodily injury and comit[ted] an act clearly dangerous to human life that cause[d] the death of an individual." Tex. Penal Code § 19.02(b)(1), (b)(2) (West 2015).

Appellant contends that the evidence presented at trial was insufficient to support his murder conviction because: (1) there were no eyewitness accounts of the altercation between appellant and complainant; (2) the police failed to find a murder weapon, namely, a knife; and (3) the State did not prove appellant's motive for stabbing complainant. Direct evidence, such as an eyewitness account, is not required to support a conviction. "It is not necessary that the evidence directly prove defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be enough to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). The jury is permitted "to draw multiple reasonable inferences as long

as each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). The evidence presented at trial is sufficient to support an inference that appellant caused complainant's death by stabbing him in the neck and the back with a knife. Appellant was found by police at the scene of complainant's death, covered in complainant's blood. While mere presence at the scene is, in and of itself, insufficient to sustain a conviction, "it is a circumstance tending to prove guilt which may be combined with other facts to show that appellant was a participant." *Wilkerson v. State*, 874 S.W.2d 127, 130 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). In every interview with police, appellant placed himself at the scene and told authorities that he had seen a knife— first in complainant's hand, and then on the ground when complainant allegedly fell on the knife. Combined with the extensive testimony from the medical examiner indicating that complainant was most likely stabbed with a knife by another person, appellant's own statements are sufficient to support an inference that it was appellant who stabbed complainant. The fact that a knife was never found and entered into evidence does not affect the sufficiency of the evidence in this case. The State need not offer a murder weapon into evidence to establish the essential elements of murder. *See* Tex. Penal Code § 19.02(b)(1), (b)(2) (West 2015). The jury could have found the essential elements of murder despite the State's failure to produce the murder weapon. Neither does the State have to prove a motive in a murder prosecution, as motive is not an element of murder. *Delacruz v. State*, 278 S.W.3d 483, 491 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

Finally, appellant argues that the evidence is insufficient because the State failed to account for the possibility that some pointed object in the debris pile caused complainant's stab wounds. This argument is misguided because "it is the State's burden to prove each element of the offense beyond a reasonable doubt, not

9

to exclude every conceivable alternative to a defendant's guilt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The State was not required to directly refute appellant's defensive theory; "the evidence is not rendered insufficient simply because appellant presented a different version of the events." *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). We hold that the evidence presented at trial is sufficient to prove each element of murder beyond a reasonable doubt. We overrule appellant's first issue.

## II. Admissibility of evidence of a previous stabbing

At trial, the State introduced evidence of two stabbings previously committed by appellant—one in 1990 and one in 2009. For the 1990 stabbing, the State presented the "pen packet" and judgment demonstrating that appellant pleaded guilty to murder and received a sentence of 20 years in prison, of which he served 16 years. Officer Evans testified that appellant told him that he had stabbed an acquaintance in self-defense after the acquaintance "c[a]me at him with a wrench." Appellant also told Evans that no wrench was found at the scene, so he decided to enter into a plea bargain with the State. Evans also testified that, in 2009, appellant stabbed and killed a neighbor at appellant's group home. Appellant asserted that he stabbed the neighbor in self-defense after the neighbor tried to attack appellant with a knife. The State presented the case to the grand jury, which returned a "no bill," declining to bring criminal charges against appellant for the stabbing.

Appellant objected to the admission of both prior stabbings at trial, but only objects to the admission of the 2009 stabbing on appeal. We review the trial court's decision to admit evidence for abuse of discretion. *Hedrick v. State*, 473 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "If the ruling was correct on any theory of law applicable to the case, in light of what was before

10

the trial court at the time the ruling was made, then we must uphold the ruling." *Sifuentes v. State*, —S.W.3d—, 2016 WL 1128175, at *7 (Tex. App.—Houston [14th Dist.] March 22, 2016, no pet.). We uphold a trial court's ruling on the admissibility of evidence "as long as the ruling was within the zone of reasonable disagreement." *Id.* Evidence of an extraneous act "is not admissible to prove a person's character in order to show on a particular occasion the person acted in accordance with this character." Tex. R. Evid. 404(b)(1). However, such evidence "is admissible when the extraneous act is: (1) relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character and (2) its probative value is not substantially outweighed by the danger of unfair prejudice." *Hedrick*, 473 S.W.3d at 829; *see* Tex. Rs. Evid. 401, 402, 403, 404(b). Texas Rule of Evidence 404(b)(2) provides that evidence of an extraneous act may be relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Such evidence also may be admissible for the purpose of rebutting a defensive theory. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002). When reviewing the trial court's evidentiary ruling, we defer to the trial court's determination of whether evidence of an extraneous act has relevance apart from character conformity and whether the probative value is substantially outweighed by the danger of unfair prejudice. *Hedrick*, 473 S.W.3d at 829.

Appellant contends that the trial court erred in misapplying the "doctrine of chances" and admitting the evidence as proof of his intent to stab complainant. The doctrine of chances provides that "evidence that appellant had on other occasions committed similar offenses to the one he is charged with serves to reduce the possibility that the act in question was done without innocent intent." *Sifuentes*, —S.W.3d—,2016 WL 1128175, at *7 (quoting *Plante v. State*, 692

11

S.W.2d 487, 492 (Tex. Crim. App. 1985)). Appellant argues that his intent was not at issue in this case because his defense was not that he lacked the requisite *mens rea* for murder, but rather that he had not committed the requisite *actus reus*. Appellant further argues that this defense had not yet been fully developed at the time that the State offered the evidence of the prior stabbing. Appellant waived an opening statement and had not affirmatively presented any defensive theory prior to the State's case-in-chief.

Although we agree that appellant did not put his intent into issue, we nevertheless hold that the trial court did not abuse its discretion in admitting the evidence to rebut appellant's defensive theory. It is apparent from the record that appellant's theory was that complainant's death was caused by an accident in which complainant stumbled and impaled himself on a sharp object sticking out of the debris pile. Although appellant had not affirmatively presented this narrative at trial—either through his own testimony or through jury argument by his attorney— he engaged in "vigorous cross-examination" of the prosecution witnesses that elucidated this defensive theory. *Robbins*, 88 S.W.3d at 261 (defendant's cross-examination of prosecution witnesses presented alternative theory that death was not a result of defendant's actions). Appellant asked each police officer who took part in the response to or investigation of complainant's death whether he or she had thoroughly checked the debris pile to determine whether any object in the pile could have caused complainant's fatal wounds. Officers Losey and Guerra each testified that, when they arrived at the scene, appellant told them that complainant had fallen on a knife. On cross-examination, appellant asked both Losey and Guerra whether appellant had told them that complainant had fallen on "something." Losey corrected appellant and reasserted that appellant told her that it was a knife that complainant had fallen on. Appellant asked Losey, "You think

12

it was a knife he said?" Losey responded, "I know he said that." Appellant then asked Losey several follow-up questions about whether and where she had documented appellant's statement regarding the knife. Appellant cross-examined Guerra similarly. On re-direct examination, the State asked Guerra to clarify that appellant had said that complainant fell on a knife, not just "something." Guerra confirmed that appellant referred specifically to a knife. Appellant then followed up with questions about whether and where Guerra documented appellant's statement. Finally, appellant questioned the medical examiner, Hines, extensively about the source of complainant's stab wounds. During his cross-examination, appellant asked Hines fourteen times whether he could say with certainty that complainant's wounds were caused by a knife or whether it was possible that some other sharp object in the debris pile caused the wounds. It is reasonable to infer that such vigorous cross-examination was intended to present an alternative theory of complainant's death in which appellant was merely a witness rather than the perpetrator. This alternative theory was undermined by evidence that appellant previously had fatally stabbed an individual whom appellant also claimed had brandished a weapon against him. The trial court did not abuse its discretion in determining that the evidence was relevant for the purpose of rebutting this alternative theory.

Having determined that the evidence of the 2009 stabbing was relevant, we evaluate whether the probative value of the evidence substantially outweighed the danger of unfair prejudice. Tex. R. Evid. 403. When conducting a Rule 403 analysis:

> courts must balance: (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the

13

evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Hedrick*, 473 S.W.3d at 830 (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). Rule 403's prohibition on evidence whose prejudicial effect outweighs its probative value "simply means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991).

Appellant provides no discussion of the Rule 403 balancing test; rather, he makes only a bare assertion that the evidence's "tendency to prove an unjustified, intentional killing was very tenuous, and certainly did not outweigh the obvious risk of unfair prejudice." We conclude that the "factors overall weigh more strongly in favor of admission." *Hedrick,* 473 S.W.3d at 831. Appellant's narrative of the events in this case is similar to that of the 2009 stabbing case. Just as in this case, appellant asserted in 2009 that an assailant confronted him with a knife. In both cases, the alleged assailant died from a stab wound. Because there was no murder weapon found and no eyewitnesses to complainant's death, the State's need for the contested evidence was significant. *See id.* at 831. Additionally, the evidence presented to the jury did not repeat any evidence that had already been admitted and did not consume an inordinate amount of time during the trial. We therefore conclude that the probative value of the contested evidence did not substantially outweigh the danger of unfair prejudice.

Appellant finally argues that the evidence of the 2009 stabbing was improperly admitted because it was evidence of "exonerated conduct." Appellant does not provide and we do not find any law supporting that proposition. Rather,

"the Court of Criminal Appeals has stated that evidence of an extraneous offense should be admitted if there is merely 'sufficient evidence' from which a hypothetical juror could reasonably conclude that the defendant committed the extraneous act." *Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014) (citing *Montgomery*, 810 S.W.2d at 376 n.4). The proponent of evidence of prior acts "has no duty to establish that the extraneous offense resulted in a formal conviction." *Id.* The evidence presented in this case is sufficient to enable a juror to conclude that appellant committed the act of stabbing his neighbor in 2009. It does not matter that appellant asserted self-defense or that the grand jury declined to indict appellant for this act. *See Dowling v. United States*, 493 U.S. 342, 350 (1990). The trial court did not abuse its discretion in admitting evidence of the 2009 stabbing.

However, even if the court erred in admitting evidence of the 2009 stabbing, any error was not harmful. "The erroneous admission of extraneous-offense evidence constitutes non-constitutional error." *Pittman v. State*, 321 S.W.3d 565, 572 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Non-constitutional error that "does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). "An appellate court may not reverse for non-constitutional error of the court after examining the record as a whole, has fair assurance that the error did not have a substantial *and* injurious effect or influence in determining the jury's verdict." *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). Considering the trial record as a whole, we have fair assurance that even if the trial court erred in admitting evidence pertaining to the 2009 stabbing, such error did not have a substantial and injurious effect in determining the jury's verdict. Even if the 2009 evidence had been

excluded, the jury would have considered evidence of the 1990 stabbing incident in which appellant pleaded guilty and served time in prison. The evidence of the 1990 stabbing is arguably more probative than the evidence of the 2009 stabbing. The facts of the 1990 stabbing are significantly similar to the facts of the present case—appellant alleged that an assailant threatened him with a weapon, the assailant's weapon was never found, and the assailant died of a stab wound. Further, appellant was adjudicated guilty of the 1990 stabbing.

Finally, while "there is always a potential that the jury may be unfairly prejudiced by the defendant's character conformity," "this impermissible inference can be minimized through a limiting instruction." *Beam*, 447 S.W.3d at 404. Here, the trial court gave the jury a limiting instruction consistent with the Rules of Evidence. "We generally presume a jury followed a trial court's instruction regarding consideration of evidence." *Sifuentes*, —S.W.3d—, 2016 WL 1128175, at *8. Having considered the trial record as a whole, we conclude that the admission of the 2009 stabbing did not tip the scales in a manner that affected appellant's substantial rights. We overrule appellant's second issue.

## Conclusion

We overrule both of appellant's issues and affirm the judgment of the trial court.


/s/    Marc W. Brown
        Justice


Panel consists of Chief Justice Frost and Justices McCally and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).