Opinion issued March 8, 2018



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00546-CR

————————————

**PHIL A. SMALLWOOD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1512287**

---

## MEMORANDUM OPINION

A jury convicted appellant, Phil A. Smallwood, of capital murder. The State

did not seek the death penalty, and thus the trial court assessed a mandatory sentence

of life imprisonment without parole.[1]  Appellant raises five points of error on appeal. In his first point of error, appellant contends that the trial court erred when it explained the State's burden of proof during voir dire.  In his second point of error, he argues that the trial court abused its discretion when it admitted evidence of extraneous conduct.  In his third, fourth, and fifth points of error, he challenges the constitutionality of his sentence of life imprisonment without parole.  We affirm.

## Background

On June 2, 2016, the State charged appellant with capital murder by causing the death of Jonathan Wilkerson while in the course of committing or attempting to commit robbery.[2]  Appellant pleaded not guilty, and the case proceeded to trial.

On the evening of October 13, 2014, Wilkerson and his girlfriend, Quathanna Lee, drove to the home of Roy Robinson, the best friend of Wilkerson's younger brother, Lawrence.  Robinson testified that Wilkerson showed him text messages from someone threatening to kill him, and that Wilkerson wanted a gun.  Wilkerson told Robinson that appellant, whom Wilkerson referred to as his "little brother's

---

[1]     *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West Supp. 2015).

[2]     The indictment alleged two enhancement paragraphs: on October 3, 2008, appellant was convicted of burglary of a habitation and, on June 23, 2011, he was convicted of unlawful possession of a firearm.

2

cousin," was going to sell him a gun.[3]  Robinson later learned that Wilkerson had been killed.

After Lee and Wilkerson left Robinson's house, they went to meet Wilkerson's "little brother's cousin."  Lee testified that Wilkerson got out of the car with Lee's cell phone and $107 while she remained in the car.  Lee saw Wilkerson talking to two black males when she heard a gunshot and saw Wilkerson fall to the ground.  She testified that she saw the two men hovering over Wilkerson's body and going through his pockets.  Lee quickly drove away and went to a police station to report the incident.

Appellant's sister, Angie Polk, testified that appellant came to her friend's house on the evening of October 13, 2014.  Polk testified that appellant told her that he was going to sell a gun to "J," and that he might rob him.  Later that evening, appellant went to Polk's apartment, took a bottle of Clorox bleach, and left.  The following day, appellant told Polk and her friend, Demetrice Williams, that he had killed Wilkerson.  Williams also testified that appellant told her and Polk that he had shot Wilkerson.

Myron Dillingham, a homicide detective with the Houston Police Department, investigated Wilkerson's murder.  Through witness interviews, surveillance tapes,

---

[3]     Jonathan and Lawrence Wilkerson share the same father but have different mothers. Lawrence's mother and appellant's mother are sisters.

3

and Wilkerson's phone, Dillingham's investigation eventually focused on appellant. Appellant was later arrested and charged with capital murder.

Dr. Pramod Gumpeni, the assistant deputy chief medical examiner at the Harris County Institute of Forensic Sciences, testified that Wilkerson died from a gunshot wound to the head and that the manner of death was homicide.

Marquese Scott, a Harris County Jail inmate, shared a jail dormitory with appellant while appellant was awaiting trial. Scott testified that appellant told him that he had planned to sell a pistol to Wilkerson but shot him instead. Scott further testified that, while he being transported to court to testify, appellant passed by him and said, "I'm going home. You know I'm going to kill you."

At the conclusion of trial, the jury found appellant guilty of capital murder. The trial court sentenced appellant to life imprisonment without parole. This appeal followed.

## Voir Dire Comments

In his first point of error, appellant contends that the trial court erred by explaining during voir dire what "proof beyond a reasonable doubt" means.

The record reflects that voir dire lasted two days.[4] On the first day, the trial court made the following statements:

---

[4] The qualified members of the second venire panel made up the jury and the qualified members of the first venire panel were designated alternate jurors.

Now, at the end of the trial, as I told you, I will give you the law that governs your deliberations. And it will have many legal definitions contained in that. But that burden of proof—that phrase beyond a reasonable doubt is one phrase that I will not be defining for you. Because the law and the courts have determined that it's really a term that's incapable of definition. The reason for that being is that the—is because it's really a personal standard to you as jurors.

On the second day, the trial court made the following statements:

And, you know, I told you I'll be giving you the law at the end of the trial. And I will tell you in that charge that the State's burden is beyond a reasonable doubt. And although you'll have a lot of legal definitions in that charge, beyond a reasonable doubt is one term that I cannot define for you. The law has decided it's really a term that's incapable of definition. I can tell you that it's a personal standard to you as jurors. I think that you will know whether or not you've been convinced beyond a reasonable doubt.

I will tell you that it's not beyond all doubt or beyond a shadow of a doubt, but there's no legal definition for it. Now, I can also tell you that I think it's a common-sense standard. And as I said, I think you'll know it when you see or hear it. And at the end of most—almost all of the trials, I usually try to talk to the jurors just to get their feelings about things at the end of the trial. And I've had jurors tell me that they either were or were not convinced by the evidence beyond a reasonable doubt. But I've never had a single juror say they didn't understand what that term meant. I think you'll know what it means.

Appellant argues that the trial court's explanation of "beyond a reasonable doubt" was objectionable because (1) calling the phrase a "personal standard" was tantamount to telling the jurors to define it for themselves; (2) each juror likely decided for himself or herself what the State's burden was; (3) it is untrue that the phrases "reasonable doubt" or "proof beyond a reasonable doubt" are incapable of definition; (4) the trial court's comment that "you'll know it when you see it"

5

discourages jurors from taking a systematic approach of determining a standard and then applying it to the evidence; (5) telling the jurors that the State's burden is determined by "common sense" denigrates the standard and the phrase "common sense" is subjective; and (6) the trial court's comment that "I've never had a single juror say they didn't understand what [beyond a reasonable doubt] means" likely inhibited any juror who did not understand the term from admitting it.

To preserve a complaint for review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling the defendant sought from the trial court with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a)(1). "Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *See Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013).

Here, appellant did not object to any portion of the trial court's explanation about which he complains on appeal. His failure to object precludes our review of this issue absent an exception to the preservation-of-error requirement. None of the trial court's comments here rose to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); *Muhammed v. State*, 331 S.W.3d 187, 194–195 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (finding defendant waived for appellate

6

review issue complaining about trial court's jury instruction concerning "beyond a reasonable doubt" because defendant failed to object to alleged error during trial); *Marshall v. State*, 312 S.W.3d 741, 744 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (concluding trial court's comments about "reasonable doubt" standard did not rise to level of fundamental error, and thus, timely and specific objections to comments were required to preserve defendant's complaint for appeal); *Rogers v. State*, 795 S.W.2d 300, 306 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (holding that trial court's comment that "the bottom line is going to be what beyond a reasonable doubt is to you" was not error because court was merely telling jurors to use their common sense).

Appellant acknowledges that he made no objection but argues that we should review the trial court's comments just as we would jury charge error and examine any error for egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (establishing standard for review of jury charge error; holding that unobjected-to jury instruction should be reviewed for egregious harm). The Court of Criminal Appeals as well as this Court have rejected this precise argument and declined to extend *Almanza* beyond the context of the jury charge. *See Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (declining to apply *Almanza* standard to trial court's comments during voir dire regarding burden of proof and concluding defendant waived any error by failing to object at trial); *see also*

7

*Robertson v. State*, No. 01-02-00046-CR, 2002 WL 31236391, at \*2–\*3 (Tex. App.—Houston [1st Dist.] Oct. 3, 2002, no pet.) (not designated for publication) (noting *Almanza* applies to jury charges, not to trial court's statements made during voir dire, and concluding that any error in trial court's statements regarding burden of proof was waived by defendant's failure to object).

The trial court's complained-of explanation did not constitute fundamental error, and therefore, appellant was required to object to the statements to preserve error for appellate review. *See Unkart*, 400 S.W.3d at 99. Having failed to do so, appellant has waived this issue. *See Fuentes*, 991 S.W.2d at 273 (concluding that defendant's failure to object waived complaint about trial court's explanation of reasonable doubt given to venire panel as belief in one's heart and conscience based upon evaluation of evidence). We overrule appellant's first point of error.

## Admissibility of Extraneous Evidence

In his second point of error, appellant contends that the trial court erred in admitting evidence of extraneous conduct. Specifically, he argues that the trial court erred in permitting Scott to testify that appellant threatened him.

Outside the presence of the jury, the prosecutor sought to introduce evidence that appellant had threatened Scott in the courthouse basement after they were transported from the jail. Trial counsel objected on the ground that the evidence was more prejudicial than probative. The trial court overruled the objection but limited

8

the testimony to the threat made that morning. Thereafter, Scott testified that, while being transported to the court to testify, appellant passed by him and said, "I'm going home. You know I'm going to kill you."

## A. Standard of Review

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). We will affirm the trial court's evidentiary ruling if it is correct under any applicable theory of law and is reasonably supported by the record. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

## B. Applicable Law

Evidence of an extraneous offense or act is generally not admissible to prove the character of a defendant in order to show that the defendant acted in conformity with that character. TEX. R. EVID. 404(b)(1); *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992). Such evidence is admissible, however, when (1) the extraneous offense or act is relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character, and (2) its probative value is not substantially outweighed by the danger of unfair prejudice. *Page v. State*, 213

9

S.W.3d 332, 336 (Tex. Crim. App. 2006); *see* TEX. R. EVID. 401, 402, 403, 404(b). Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action. TEX. R. EVID. 401.

Even if the extraneous evidence is relevant, the trial court may properly exclude it under rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *See* TEX. R. EVID 403. When conducting a rule 403 analysis, courts "must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

## C. Analysis

Appellant argues that the trial court erred in admitting Scott's testimony that appellant threatened to kill him.

"A defendant's conduct after the commission of a crime which indicates a 'consciousness of guilt' is admissible to prove that he committed the offense." *Hedrick v. State*, 473 S.W.3d 824, 830 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (quoting *Ross v. State*, 154 S.W.3d 804, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)). Texas courts recognize "consciousness of guilt" as an exception to rule 404(b)'s general prohibition against extraneous offense evidence. *Hedrick*, 473 S.W.3d at 830; *Torres v. State*, 794 S.W.2d 596, 598–99 (Tex. App.—Austin 1990, no pet.). Acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under rule 404(b) as showing "consciousness of guilt." *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994), *cert. denied*, 519 U.S. 1030, 117 S. Ct. 587 (1996). Thus, threats made in an effort to suppress or destroy evidence are probative of consciousness of guilt. *See Rodriguez v. State*, 577 S.W.2d 491, 492–93 (Tex. Crim. App. 1979); *Hedrick*, 473 S.W.3d at 830.

Here, appellant's threat that he was going to kill Scott once he was out of prison was relevant to show appellant's consciousness of guilt. Rule 404(b) did not prohibit Scott's testimony regarding appellant's efforts to deter him from testifying that appellant told him he shot Wilkerson with the threat of violence. Therefore, the trial court did not abuse its discretion in determining that evidence of appellant's

11

threat had relevance apart from the tendency to show conduct in conformity with character. *See* TEX. R. EVID. 404(b).

We must next consider whether the trial court abused its discretion by determining that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. With regard to the rule 403 balancing test, appellant argues only that admission of the evidence created "a substantial risk that one or more of the jurors voted to convict him [of] capital murder simply to keep a seemingly dangerous man behind bars."

A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt. *See Torres*, 794 S.W.2d at 598. Threats or other attempts at coercion are "hardly the actions of an innocent accused," and evidence of appellant's threat is as probative of guilt as would be his flight. *See Rodriguez*, 577 S.W.2d at 493. Here, appellant's threat that he would kill Scott when he got out of prison was clearly intended to intimidate Scott and deter him from testifying against appellant.

The State's need for the evidence was significant. The evidence was circumstantial. There was no physical or direct evidence that appellant was the shooter, and the case hinged on evidence that appellant had communicated with Wilkerson through Facebook about purchasing a gun and several witnesses' testimony that appellant had confessed to them that he had killed Wilkerson. Therefore, evidence of his consciousness of guilt was important to the State's case

12

and allowed the State to counter appellant's theory that the witnesses were not credible. *See Hedrick*, 473 S.W.3d at 831 (concluding State's need for evidence of threat to testifying witness was significant given that defendant claimed death was drowning accident and defendant was only witness to complainant's death).

Evidence of appellant's threat was unlikely to confuse or influence the jury in an improper way. Rather, it is rational to conclude that appellant threatened Scott because he was guilty of the charged offense. *See id.* Lastly, the time required to develop the evidence was brief—Scott's testimony consisted of less than one page of the record—and the testimony was not cumulative of other evidence.

We conclude that the trial court did not abuse its discretion in determining that the probative value of the evidence of appellant's threat to Scott was not substantially outweighed by the danger of unfair prejudice. We therefore overrule appellant's second point of error.

## Constitutionality of Sentence

In his third, fourth, and fifth points of error, appellant contends that an automatic sentence of life, without the possibility of parole, violates both the United States Constitution and the Texas Constitution because it denies him an individualized hearing at which he could present, and the trial court could consider, mitigation evidence. Specifically, appellant argues that his sentence violates (1) the Eighth Amendment's prohibition on cruel and unusual punishment; (2) the

13

prohibition on cruel or unusual punishment found in Article I, Section 13 of the Texas Constitution; and (3) the Fourteenth Amendment's due process guarantee. In effect, these three points of error challenge the constitutionality of Penal Code section 12.31(a)(2), which prescribed appellant's automatic sentence of life, without the possibility of parole. *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West Supp. 2017).[5]

The United States Supreme Court and Texas courts of appeals, including this one, have consistently held that statutes that allow an automatic life sentence without the possibility of parole are constitutional. *See Harmelin v. Michigan*, 501 U.S. 957, 994–95, 111 S. Ct. 2680, 2701 (1991) (unequivocally providing that imposition of mandatory sentence of life in prison without possibility of parole does not violate Eighth Amendment's protection against cruel and unusual punishment); *Lopez v. State*, 493 S.W.3d 126, 139–40 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd), *cert. denied*, 137 S. Ct. 1076 (2017) (holding mandatory life sentence, without possibility of parole, did not violate Eighth Amendment or Article 1, Section 13 of Texas Constitution, nor did it violate constitutional due process rights); *Modarresi*

---

[5] Although appellant has urged application of the United States and Texas constitutional provisions as distinct issues, the Court of Criminal Appeals has affirmatively rejected the argument that the difference between the Eighth Amendment's "cruel and unusual" phrasing and the Texas Constitution's "cruel or unusual" phrasing allows the Texas provision to be interpreted more expansively. *See Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997). Accordingly, we analyze appellant's third and fourth points together.

14

*v. State*, 488 S.W.3d 455, 467 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding Penal Code section 12.31(a)(2) did not impose cruel and unusual punishment prohibited by United States and Texas Constitutions); *see also Duran v. State*, 363 S.W.3d 719, 721–23 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (concluding Eighth Amendment is not violated by unavailability of any procedural mechanism to allow court or jury to consider mitigating factors under mandatory sentencing scheme contained within Penal Code's habitual offender statute). Accordingly, we overrule appellant's third, fourth, and fifth points of error.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

Panel consists of Justices Higley, Massengale, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).