

NUMBER 13-18-00172-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANTHONY RICHARDSON,                                                                       Appellant,

v.

THE STATE OF TEXAS,                                                                       Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Memorandum Opinion by Justice Longoria**

Appellant Anthony Richardson was convicted of murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b) (West, Westlaw through 2017 1st C.S.). By three issues, Richardson argues that the trial court erred by: (1) failing to include an instruction in the jury charge on the lesser-included offense of manslaughter; (2) failing to include a

sudden passion instruction in the punishment charge; and (3) admitting evidence of a firearm. We affirm.

## I. BACKGROUND

The underlying facts are uncontested. Superior Painting is a company that repaints and remodels Walmart buildings across the country. In 2016, Richardson began working for Superior Painting in Arkansas. Richardson's wife, Ashley Richardson, also began working at Superior Painting. On February 15, 2017, Richardson was working at a Walmart in Corpus Christi with co-worker John Harley.

Shortly after 10 p.m., Ken Miller, the assistant manager at Walmart, found Harley on the floor of a bathroom that was closed to the public due to remodeling. Miller testified he saw Harley "gasping for breath, literally blood everywhere, more than you can probably imagine." Miller saw Richardson pacing next to Harley. Because he had past medical training, Miller attempted to clear Harley's airway; a nurse from the sales floor came in to assist. According to Miller, "[w]e had a difficult time because his skull was moving. It would not stay together, so to speak." Some of Harley's brain matter was later collected from the bathroom floor. Miller called 911 and informed the dispatcher that he wanted to perform CPR; however, the 911 respondents instructed Miller not to perform CPR because it might seriously injure Harley's brain or spine, given his reported condition. Medics arrived and took Harley away on a gurney. Miller originally thought Harley had simply fallen from the ladder he saw in the bathroom. Upon reviewing security footage, Miller noticed Richardson left the bathroom, walked to the clothing department, entered one of the break rooms, and then informed someone about Harley on his way back to the bathroom.

2

Philip Bintliff, a police lieutenant with the City of Corpus Christi, testified that he visited the Richardsons' hotel room; he believed it was highly suspicious that Richardson left the scene without talking to the police, especially because Richardson was in the bathroom where the incident occurred. Bintliff claimed Ashley answered the door and appeared to be under the influence of alcohol or drugs. Ashley refused to give the officers consent to search the room. The officers saw, in plain sight, a new pair of tan boots along with blood-stained clothes that looked identical to what Richardson was wearing at Walmart. While the officers were still at the hotel room, the phone rang. Bintliff answered the phone; the caller identified himself as Richardson and agreed to meet with the police. A passerby at the hotel informed the police that he saw Richardson throw a white bucket in the back dumpster. The police retrieved a white bucket from the dumpster; the bucket contained a shoebox and a pair of bloody tennis shoes. The shoebox matched the new pair of tan boots in the Richardsons' hotel room.

Richardson agreed to meet with the police to provide a statement, which was shown at trial. In the interview, Richardson admitted to hitting Harley in the back of the head, knocking him off of the ladder, and then stomping on his head three times. Richardson claimed he did it because Harley was an "evil pedophile that hurt women and children." Richardson referred to himself in the confession as "Batman" and claimed he was "cleaning up the streets." The officer present during the video confession testified that Richardson did not appear to be under the influence of any substance during the interview.

Harley died on February 18, 2017, three days after the attack. Adel Shaker, a medical pathologist, testified the autopsy revealed a fracture at the base of the skull,

multiple fractures along the left parietal bone, and subdural hemorrhaging on both sides of the brain. Shaker opined that the injuries were not consistent with falling just a few feet; rather, the injuries were consistent with extreme blunt force trauma, akin to being struck by a motor vehicle or falling several stories.

On May 25, 2017, several months after Harley's death, a .22 Ruger gun was found behind the ceiling tiles of the Walmart break room Richardson visited after attacking Harley. Although the original gun records indicated the gun was sold to Brenda Miles, the corrected records reflected the gun was sold to Ashley Richardson.

On March 1, 2018, the jury found Richardson guilty of murder. At the punishment phase, Richardson testified he had been addicted to methamphetamines since he was twelve years old. Richardson claimed that being on methamphetamines caused him to become "obviously delusional, paranoid, angry, completely crazy . . . [and to] full on believe falsities that made [him] commit actions [he] never intended to happen." He referred to Harley as a nice man and expressed remorse for killing him. The jury assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court pronounced sentence as assessed by the jury. Richardson filed a motion for new trial, arguing that he received ineffective assistance of counsel, and that the trial court erred by failing to instruct the jury on the lesser-included offense of manslaughter and by failing to include an instruction in the punishment charge on sudden passion. The trial court held a hearing on the motion, but neither the record nor the parties refer to the trial court's ruling on the motion. This appeal followed.

## II. LESSER-INCLUDED OFFENSE

4

In his first issue, Richardson argues the trial court erred by failing to submit an instruction to the jury on the lesser-included offense of manslaughter.

## A. Standard of Review and Applicable Law

"On appeal, jury-charge error is reviewed using a two-step process. First, the court determines whether error exists in the charge. If there is, we determine if the appellant has been harmed by the error." *Ferreira v. State*, 514 S.W.3d 297, 300 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).

We use a two-prong test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *Wortham v. State*, 412 S.W.3d 552, 554 (Tex. Crim. App. 2013) (citing *Hall v. State,* 225 S.W.3d 524, 528 (Tex. Crim. App. 2007)). First, we must consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Wortham*, 412 S.W.3d at 554. If it is a lesser-included offense, then we must determine whether the evidence admitted at trial supports the instruction. *See id.*

Whether an offense is a lesser-included offense is a question of law. *Id.* "[W]e do not consider the evidence that was presented at trial. Instead, we consider only the statutory elements of [the offense] as they were modified by the particular allegations of the indictment. . . . We then compare them with the elements of the [requested] lesser offense." *Hall,* 225 S.W.3d at 536. More specifically, an offense is a lesser-included offense if, among other things, "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (West, Westlaw through 2017 1st C.S.).

5

The purpose of the second prong is to ensure that "the lesser-included offense is a valid, rational alternative" to the charged offense. *Wortham*, 412 S.W.3d at 557. "Anything more than a scintilla of evidence entitles the defendant to the lesser charge. . . . However, such evidence cannot be mere speculation—it must consist of affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.* at 558.

Murder and manslaughter are both "result-oriented" offenses. *Atkinson v. State*, 517 S.W.3d 902, 906 (Tex. App.—Corpus Christi 2017, no pet.) (citing *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013)); *see Johnson v. State*, 364 S.W.3d 292, 296 (Tex. Crim. App. 2012); *see also Rodriguez v. State*, 24 S.W.3d 499, 502 (Tex. App.—Corpus Christi 2000, pet. ref'd) ("The three conduct elements which may be involved in an offense are: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct."). A person commits murder by "intentionally or knowingly caus[ing] the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1). A person commits manslaughter by "recklessly caus[ing] the death of an individual." *Id.* § 19.04 (West, Westlaw through 2017 1st C.S.). Regarding the relevant mental states, "[a] person acts intentionally, or with intent, with respect to . . . a result of his conduct when it is his conscious objective or desire to . . . cause the result." *Id.* § 6.03(a). "A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id.* § 6.03(c).

**B. Analysis**

6

The State acknowledges that manslaughter is a lesser-included offense of murder because the only difference between the two is the culpable mental state:  murder requires intentionally or knowingly causing the death of an individual whereas manslaughter only requires recklessly causing the death of an individual.  *See* TEX. CODE CRIM. PROC. ANN. art. 37.09; *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *see also Flores v. State*, No. 13-14-00338-CR, 2015 WL 9487029, at *3 (Tex. App.—Corpus Christi Dec. 29, 2015, pet. ref'd) (mem. op., not designated for publication).  Therefore, the next step is to determine whether the evidence at trial supported the inclusion of a manslaughter instruction.  *See Wortham*, 412 S.W.3d at 557.

Richardson contends that there was at least a scintilla of evidence raised at trial that supported a finding that he acted recklessly instead of intentionally in causing the death of Harley.  More specifically, Richardson points to three pieces of evidence for his contention:  (1) Richardson wore soft-soled tennis shoes as opposed to hard-soled dress shoes at the time he stomped on Harley's head; (2) there were "hard-edged tools" in the restroom that Richardson could have easily used to cause Haley's death instead; and (3) Richardson was the first person to alert other people about Harley's injuries.  However, none of this evidence "rebuts or negates an element of the greater offense," which is murder.  *Id.* at 558.  The fact that Richardson wore soft-soled shoes at the time of stomping on Harley's head is not affirmative evidence that Richardson's actions were reckless as opposed to intentional or knowing.  Likewise, just because there were hard-edged tools in the vicinity in no way negates Richardson's intent or implies a mere recklessness in causing Harley's death; choosing to strike Harley with his fist and feet instead of a hard-edged tool doesn't affirmatively show that Richardson was reckless.

7

Also, even though alerting others of Harley's injuries could potentially indicate remorse, it does not rebut Richardson's intent in causing Harley's death in the first place.

All of the evidence in the record reflected that Richardson acted intentionally or knowingly. In the video confession, he claimed that he had been looking for Harley at Walmart and finally located him in the bathroom. Richardson admitted that he entered the bathroom with the desire to "rip [Harley's] head off and sh\*\* down his neck." Upon finding Harley on the ladder, Richardson confessed to punching Harley in the back of the head, knocking him off the ladder, and then stomping on his head three times. Richardson bragged that he "took [Harley's] head off with one hit." Richardson further confessed to knowing Harley was unconscious after the second stomp and yet he stomped on his head a third time just to make sure he would not get back up. Richardson testified that he went to the employee break room afterwards to change clothes before alerting other people about Harley so he could act like he just found Harley that way. Richardson further commented that he felt "justified" watching the medics roll Harley away on a gurney.

In summary, nothing in the record raises manslaughter as a "valid, rational alternative" to murder. *Id.* Richardson alerting others to Harley's injuries, wearing soft-soled shoes, and the availability of hard-edged tools do not negate or rebut the intentional or knowing element of murder. *See id.* Therefore, the trial court did not abuse its discretion in failing to submit an instruction on the lesser-included offense of manslaughter. We overrule Richardson's first issue.

### III. SUDDEN PASSION INSTRUCTION

8

In his second issue, Richardson argues that the trial court erred by failing to include an instruction on sudden passion in the punishment charge.

## A. Standard of Review and Applicable Law

In analyzing a jury charge issue, we first determine whether error exists. *See Ngo*, 175 S.W.3d at 743; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. oh reh'g). "Only if we find error do we then consider whether an objection to the charge was made and analyze for harm." *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.— Houston [1st Dist.] 2009, pet. ref'd).

"At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2017 1st C.S.)). Defensive issues "are not 'law applicable to the case' under Code of Criminal Procedure 36.14 unless and until the defendant raises the issue by a timely objection or request." *Newkirk v. State*, 506 S.W.3d 188, 190 (Tex. App.— Texarkana 2016, no pet.) (quoting *Wooten v. State*, 400 S.W.3d 601, 605 n.19 (Tex. Crim. App. 2013)). "Sudden passion is a defensive issue and, therefore, does not become the law of the case until it is raised by the defendant." *Newkirk*, 506 S.W.3d at 190; *see Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011) ("Article 36.14 imposes no duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues."); *Swaim v. State*, 306 S.W.3d 323, 325 (Tex. App.—Fort Worth 2009, pet. ref'd) ("Neither *Huizar*, nor *Tubert*, nor any other court of criminal appeals case that we have located, nor

9

article 36.14 hold or require that a trial court must include an instruction at punishment on sudden passion in the absence of a request by the defendant.").

## B. Analysis

Richardson argues there was sufficient evidence in the record to warrant an instruction to the jury on sudden passion in the punishment charge. However, because Richardson failed to request a sudden passion instruction and did not object to the trial court's failure to include such an instruction, the trial court was not required to sua sponte include a sudden passion instruction in the punishment charge. *See Taylor*, 332 S.W.3d at 487; *Simpson v. State*, 548 S.W.3d 708, 711 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) ("Simpson acknowledges that he did not 'explicit[ly] request' a sudden passion instruction, and the record reflects no objection to its absence. That resolves this dispute. The trial court did not err by failing to instruct the jury on sudden passion."); *Newkirk*, 506 S.W.3d at 190. In other words, "even if some evidence may have implicated sudden passion, the trial court was not required to sua sponte submit an instruction on it." *Simpson*, 548 S.W.3d at 711. Therefore, the trial court did not err because it had no duty to submit an instruction on sudden passion absent a request or objection from Richardson. *See id.* We overrule Richardson's second issue.

### IV. ADMISSION OF EVIDENCE

In his third issue, Richardson argues the trial court erred by admitting evidence of the firearm found in Walmart several months after the incident.

## A. Standard of Review and Applicable Law

A trial court's ruling regarding the admissibility of evidence is reviewed for abuse of discretion. *See Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). As long

10

as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it will be upheld. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Upon finding a non-constitutional error, the reviewing court will reverse only upon a finding that the error affected the substantial rights of the accused. TEX. R. APP. P. 44.2(b); *see Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). Substantial rights are not affected if, based on the record as a whole, this Court has a fair assurance that the erroneous admission of evidence had either no influence or only a slight influence on the jury. *See Whitaker v. State*, 286 S.W.3d 355, 364 (Tex. Crim. App. 2009); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In making this assessment, this Court considers everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record. *Motilla*, 78 S.W.3d at 355. The presence of overwhelming evidence supporting the conviction can be a factor in the evaluation of harmless error. *See id.* at 356.

The Texas Rules of Evidence define relevant evidence as any evidence that has a tendency to make a fact more or less probable than it would be without the evidence and that fact is of consequence in determining the action. TEX. R. EVID. 401. "A defendant's conduct after the commission of a crime which indicates a 'consciousness of guilt' is admissible to prove that he committed the offense." *Hedrick v. State*, 473 S.W.3d 824, 830 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) ("A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt."). Attempts to hide or conceal evidence proves consciousness of guilt that is admissible in the guilt phase of trial. *See Guevara v. State*,

11

152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Bryan v. State*, 990 S.W.2d 924, 928 (Tex. App.—Beaumont 1999, no pet.); *see also Salazar v. State*, No. 13-11-00321-CR, 2012 WL 2357744, at *10 (Tex. App.—Corpus Christi June 21, 2012, pet. ref'd) (mem. op., not designated for publication).

## B. Analysis

Richardson argues that evidence of the .22 Ruger firearm was irrelevant. The gun was not mentioned in the indictment and he argues it had no tendency to make it more or less probable that he intended to cause Harley's death. According to Richardson, the presence of the gun only served to be "highly prejudicial on the issue of specific intent by suggesting some general character of dangerousness." However, as the State contends, the gun was relevant in showing Richardson's culpable mental state.

The record reflected that after attacking Harley, Richardson washed off the blood and hid the clothes and shoes he was wearing. He put on new clothes and new shoes and then acted like he did not know what happened. The gun found in the break room ceiling was traced back to Ashley, Richardson's wife. The gun was black and yellow, the "most common colors associated with Batman," according to one of the officers that testified at trial. During a phone call from jail, Ashley asked Richardson about "Batman," hoping that Batman was now at the "bottom of the ocean." Richardson replied that he had gotten rid of it. Even though the State did not prove that Richardson used the gun to commit murder, evidence of Richardson attempting to conceal evidence, including the firearm, was admissible to prove his consciousness of guilt. *See Guevara*, 152 S.W.3d at 50; *Bryan*, 990 S.W.2d at 928; *see also Salazar*, 2012 WL 2357744, at *10.

More importantly, even if the trial court did commit error by admitting evidence of the firearm into evidence, any such error would be harmless.  *See* Tᴇx. R. Aᴘᴘ. P. 44.2(b); *Whitaker*, 286 S.W.3d at 364; *Motilla*, 78 S.W.3d at 355.  Based on the record as a whole, and in light of the overwhelming evidence of Richardson's guilt, including his own video confession of attacking Harley, we have a fair assurance that admitting evidence of the firearm had either no influence or only a slight influence on the jury.  *See Whitaker*, 286 S.W.3d at 364.  We overrule Richardson's third issue.

**V. Cᴏɴᴄʟᴜsɪᴏɴ**

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Delivered and filed the
18th day of April, 2019.